IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RYan TALLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 11-2597-CM |
| ) | |
| **WASHBURN UNIVERSITY, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Defendant Correct Care Solutions, LLC ("CCS") seeks summary judgment as to plaintiff Ryan Talley's claims against it (Doc. 14). These include a breach of contract claim and a state-law wrongful termination claim. Because the undisputed facts establish that plaintiff was not an employee of CCS, the court grants CCS's motion as to Count V. But because disputed issues of fact remain as to whether a valid contract existed between plaintiff and CCS, the court denies CCS's motion as to Count IV. Because the court does not rely on the challenged material in Ryan Talley's affidavit in reaching its conclusions, the court denies defendant's motion to strike (Doc. 30) as moot.

**I.     Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id*. at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

**II.   Facts**

The following facts are undisputed and are drawn directly from defendant CCS's motion. Plaintiff's additional facts are noted.

Defendant Washburn University ("Washburn") and Kansas Women's Prison, a/k/a/ Topeka Correctional Facility (the "Prison"), entered into an agreement (the "Washburn/Prison Agreement"), effective August 1, 2009, governing a practicum program (the "Practicum") for students enrolled in Washburn's Master of Arts in Psychology with an Emphasis in Clinical Skills program (the

Case 2:11-cv-02597-CM-DJW   Document 33   Filed 05/18/12   Page 3 of 9

-3-

"MAPECS Program").

The Practicum for the Washburn MAPECS Program provided students with twenty hours of practicum experience per week at the Prison for two academic semesters under the supervision of a licensed psychologist who is a full-time staff member of the Prison. Washburn students received credit toward their Master of Arts degree for their participation in the Practicum.

CCS operates and manages the medical facility at the Prison for the Kansas Department of Corrections. CCS cooperates with and assists Washburn and the Prison in providing practicum training at the Prison to Washburn students enrolled in the MAPECS Program.

Washburn MAPECS Program students enroll in the Practicum through Washburn, as well as pay tuition to Washburn, in order to receive the Practicum credit hours towards earning the Master of Arts degree. Practicum students at the Prison are supervised by both CCS and Washburn licensed psychologists during their Practicum experience.

During their Practicum training at the Prison, Washburn MAPECS Program students generally observe and perform routine prisoner/client evaluations, interviews, and counseling, including administration of traditional psychometric tests and assessment techniques specific to CCS's operations, and certain short- or long-term treatment procedures utilized by the Prison.

Under the Washburn/Prison Agreement, the Prison has the discretion, after consultation with a Washburn representative, to exclude a MAPECS Program student from the premises because of unacceptable conduct or a detrimental or objectionable state of health.

Plaintiff entered the Washburn MAPECS Program in the Fall of 2007. On or about August 17, 2009, Plaintiff decided to enroll and participate in the Practicum program and, incident thereto, signed an "Internship Agreement for Correct Care Solutions" ("Internship Agreement").

Plaintiff's student internship, pursuant to the Washburn/Prison Agreement and the Internship Agreement, was to begin August 24, 2009, and continue until May 2010. The Internship Agreement provided in pertinent part, "This is an unpaid internship, so you will not receive payment for any hours you work during your internship with CCS. Because of your status as an intern, the company medical plan and other benefits are not available to you."

Plaintiff began his Practicum student internship in the Prison in October 2009, and continued until on or about March 26, 2010, when he was involuntarily terminated from the Practicum. Because he was a temporary student intern participating in the MAPECS Practicum program, Plaintiff was never carried in the CCS employee database as an employee during the period of his internship.

Plaintiff received no compensation or remuneration of any kind from CCS during the time that he participated as a temporary intern in the MAPECS Practicum at the Prison. Specifically, plaintiff received from CCS no salary or wages; no bonuses; no paid or unpaid sick leave; no vacation time; no bereavement leave; no health insurance coverage; no disability pay; no retirement/401k/IRA pay, benefits or contributions; no allowances or reimbursements for meals, transportation, lodging, or work uniforms; no licensing fee payments or reimbursements; no tuition reimbursement, either full or partial; and no medical care. Plaintiff maintains that he did, however, receive a benefit from CCS in the form of experience, training, and supervision.

CCS has never had occasion to pay any payroll taxes incident to plaintiff's participation as a part time student intern under the MAPECS Program, or to prepare or submit forms to the IRS for the purpose of reflecting or documenting its payment of any such payroll taxes in regard to him. Additionally, CCS has never submitted plaintiff's name or personal information to its workers' compensation insurance carrier for the purpose of providing plaintiff with state workers'

compensation coverage or benefits.

Plaintiff's complaint does not allege that he was ever an employee of CCS, that CCS was ever his employer, or that he ever received compensation, benefits, or remuneration of any kind from CCS during his Practicum training. In response to this motion, however, plaintiff argues that he did receive benefits from CCS, including experience, training, and supervision, and that he was therefore a common-law employee.

Plaintiff alleges that CCS wrongfully terminated him from his student intern Practicum because of his Attention Deficit Hyperactivity Disorder ("ADHD"). Plaintiff has brought two causes of action against CCS arising from his early termination from the MAPECS Practicum program: Count IV – Breach of the Internship Agreement, and Count V – public policy-based wrongful termination as a result of plaintiff's membership in a category of persons (*i.e.*, ADHD disabled) protected by federal and state antidiscrimination laws. The court addresses these counts in reverse order, as the parties did.

**III.   Discussion**

### Count V – Wrongful Discharge

The tort of wrongful or retaliatory discharge makes it tortious to terminate an employee for reasons that "seriously contravene[ ] a very clear public policy." *Morriss v. Coleman Co., Inc.*, 738 P.2d 841, 848 (Kan. 1987). Plaintiff argues that his termination contravened the clear public policy set forth by federal law and the Kansas Act Against Discrimination ("KAAD").

The viability of plaintiff's wrongful termination claim hinges on whether, as a matter of law, CCS and plaintiff were engaged in an employer-employee relationship. Although plaintiff admits he was an unpaid intern, plaintiff claims that an employment relationship arose under common law because CCS had the right to control plaintiff's conduct at CCS and routinely exercised this right of

control. Plaintiff cites two Kansas cases and a Ninth Circuit Court of Appeals case setting out a number of factors relevant to determining the existence of an employer-employee relationship. He argues that, under those factors, he should be considered an employee, primarily because of the right-of-control factor. However, these cases focus on the difference between independent contractor status versus employee status: there is no question that these individuals were paid. (*See* Doc. 25 at 6–7 (citing *Hartford v. Dep't of Human Res.*, 32 P.3d 1146 (Kan. 2001); *Olds-Carter v. Lakeshore Farms, Inc.*, 250 P.3d 825, 833–34 (Kan. Ct. App. 2011); *Matcovich v. Anglim*, 134 F.2d 834 (9th Cir. 1943)).)

As CCS notes, the threshold question of remuneration is dispositive. To pursue a claim under Title VII, the KAAD, and/or the common-law, public-policy-based tort of wrongful termination, a plaintiff must be an employee. Unless a student receives remuneration for the work he performs, he is not considered an employee. *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) (citing *O'Connor v. Davis*, 126 F.3d 112, 115–16 (2d. Cir. 1997)).

Regardless, as defendant correctly notes, a public policy arising out of federal law cannot serve as the basis for a state-law wrongful discharge claim in Kansas. *See Hunter v. Duckwall-Alco Stores, Inc.*, No. 00-2476-KHV, 2001 WL 533198, at *2 (D. Kan. Apr. 3, 2001) (citing *Doebele v. Sprint Corp.*, No. 00-2053, 2000 WL 1745262, at *3 (D. Kan. Nov. 17, 2000) (dismissing common law wrongful discharge claims based the KAAD and KADEA); *Chapman v. Atchison Casting Corp.*, No. 99-2094, 2000 WL 1469315, at *3 (D. Kan. Sept. 25, 2000) (dismissing common law retaliatory discharge claims based on KAAD and KADEA)). Likewise, the KAAD does not set forth any clear public policy upon which plaintiff, under the undisputed facts of this case, could base his wrongful discharge claim. The KAAD only protects individuals in employment relationships. *See* Kan. Stat. Ann. § 44-1001.

Although plaintiff may be correct in asserting that the internship with CCS conferred a benefit on him in the form of training and experience, the undisputed facts conclusively establish that this was an unpaid, temporary, part-time internship. Plaintiff volunteered and received no remuneration. He is not, as a matter of law, an employee of CCS entitled to bring the claim he asserts in Count V of his complaint. CCS is entitled to judgment as a matter of law on Count V.

## Count IV – Breach of Contract

Plaintiff argues that by terminating him before the expiration of his contract, CCS breached the Internship Agreement. Plaintiff alleges that, as a result, he was dismissed from the Clinical Psychology Graduate Program at Washburn and has been unable to obtain his degree or his license as a psychologist. CCS argues that, based on the undisputed facts, plaintiff cannot establish the essential elements of his breach of contract claim. Specifically, CCS argues that the Internship Agreement is unenforceable for lack of consideration and/or mutuality of obligation.

Under Kansas law, the essential elements of a breach of contract claim require plaintiff to establish: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) damages caused by the breach. *See* Pattern Inst. Kan. 4th Civ. § 124.01-A.

Here, defendant CCS seeks judgment based on plaintiff's inability to satisfy the second element. For a contract to be legally enforceable, something of value must be bargained for and given in exchange for the promise. This is "consideration." "'Something of value' may consist of a promise (such as a promise to pay money or to perform services or to deliver goods), an act (such as the payment of money, the delivery of goods, or the performance of services), or a forbearance (such as forbearance to sue, to compete, to promise, or to act)." *See* Pattern Inst. Kan. 4th Civ. § 124.12.

-7-

In Kansas, if a written contract exists, consideration is presumed. When a party raises lack of consideration, that party must produce substantial evidence to overcome the presumption. *State ex rel. Ludwick v. Bryant*, 697 P.2d 858, 861 (Kan. 1985); *see* Kan. Stat. Ann. §§ 16-107 and 16-108. Generally, when the existence of consideration for a contract is controverted, the issue is one for the trier of fact. *Fieser v. Stinnett*, 509 P.2d 1156, 1162 (Kan. 1973); *Ferraro v. Fink*, 379 P.2d 266, 269 (Kan. 1963).

CCS argues that, as with the wrongful discharge claim, the fact that plaintiff was not receiving any remuneration is fatal to his claim. CCS argues that the absence of an agreement to pay wages means this contract does not qualify as a partnership agreement, independent contractor agreement, or a master-servant agreement, and is therefore unenforceable. According to CCS, "[b]ecause the Internship Agreement . . . manifests no obligation or assent of CCS to pay Plaintiff any form of wages or other remuneration while he interned temporarily with CCS, and fails to manifest any assent by CCS to be bound in any other material way to Plaintiff as [a] putative employee, as a matter of law, the Internship Agreement is unenforceable as a contract against CCS." (Doc. 15 at 16–17.)

The court believes that CCS's logic is flawed. A promise to pay wages is not the only type of consideration by which a valid contract may be formed. The court has reviewed the document entitled Internship Agreement (Doc. 15-4) and concludes that defendant's motion for summary judgment must be denied. There are genuine issues of fact in dispute as to whether a valid contract existed between plaintiff and defendant CCS.

**IT IS THEREFORE ORDERED** that Defendant Correct Care Solutions, LLC's Motion for Summary Judgment on Counts IV and V of the Complaint (Doc. 14) is granted in part and denied in part. Defendant CCS is entitled to judgment on Count V of plaintiff's complaint.

-9-

**IT IS FURTHER ORDERED** that Defendant Correct Care Solutions, LLC's Motion to Strike Certain Statements in Plaintiff's Response to Defendant's Statement of Facts, Plaintiff's Statement of Additional Uncontroverted Facts, and Plaintiff's Affidavit and Suggestions in Support (Doc. 30) is denied as moot, without prejudice to re-raising the arguments at a later point in this litigation.

Dated this 18th day of May 2012, at Kansas City, Kansas.

                                           **s/ Carlos Murguia**
                                           **CARLOS MURGUIA**
                                           **United States District Judge**